IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON



ENTERED
SEP 21 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

MARSHALL D. DILLON,

    Plaintiff,

v.                                                                       Civil Action No. 3:04-0929

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Marshall D. Dillon appeals the Social Security Commissioner's (hereinafter "Commissioner") final decision denying his application for supplemental security income (hereinafter "SSI") based on disability, brought under 42 U.S.C. § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### I

The plaintiff protectively filed his applications for SSI on June 3, 2002, alleging disability commencing December 15, 1999, as a consequence of a heart attack, low back pain, blindness in his right eye and range of motion problems with his knees and right elbow. His application was denied initially and again upon reconsideration. At his request, an administrative hearing was held on February 21, 2004. On April 22, 2004, an administrative law judge (hereinafter "ALJ") found that he was not disabled, and his decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Thereafter, the plaintiff filed this

action seeking review of the Commissioner's decision.

At the time of the ALJ's decision, the plaintiff was forty-six years of age, had obtained a high school education and had work experience as a truck driver. In his decision, the ALJ determined from the objective medical evidence that the plaintiff suffered from the following "severe" impairments[1] as defined by the social security regulations: "chronic cervical and lumbosacral strain, degenerative joint disease of the knees, coronary artery disease, alcohol dependence, and a depressive disorder not otherwise specific." (R. 18.) He also determined that the plaintiff did not have an impairment or impairments which in combination satisfied or equaled any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. He further determined that the plaintiff had the following residual functional capacity (hereinafter "RFC"):

> The claimant is able to perform light work. He can never be exposed to excessive dust or fumes. He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He has no useful vision in the right eye. He is unable to work in cold temperature extremes. He must be able to alternate between sitting and standing at one-half hour intervals.

(R. 19.) On the basis of this determination and plaintiff's age, education, and employment background, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert (hereinafter "VE"), the ALJ found him not disabled.

Additional facts will be introduced as they relate to plaintiff's arguments for relief.

## II

Under the Social Security Act (hereinafter "Act"), the Court is required to uphold the

---

[1] A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activity. 20 C.F.R. § 416.921(a).

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Tbl. 2.

Commissioner's decision if the decision is supported by substantial evidence and adheres to proper legal standards. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or his ALJ, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), and "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner or his ALJ]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Accordingly, the issues before the Court are whether the ALJ's decision is supported by substantial evidence that plaintiff is not disabled within the meaning of the Act and whether the decision is based on the correct application of the relevant law. *Coffman*, 829 F.2d at 517.

According to the Act, an individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. § 1382c(a)(3)(A) (West Supp. 2000). The Commissioner has developed a five-step procedure for making this determination. The first step requires consideration of whether the claimant is engaged in substantial gainful activity. If so, the claimant is found not disabled. If not, the second step requires a finding of whether there is a

"severe" impairment. If not, the claimant is found not disabled. If so, the third step calls for an analysis of whether the impairment(s) meets or equals one contained in the listing of impairments.[3] If so, the claimant is found disabled without further analysis. If not, the process continues to the fourth step where it is determined whether the claimant's impairment(s) prevents the performance of his or her past relevant work. If not, the claimant is found not disabled. If so, the burden of production shifts to the Commissioner for the final step.[4] In the fifth step, the Commissioner must demonstrate that the claimant can do other work. If the Commissioner satisfies this burden, benefits are denied. Otherwise, the claimant is found disabled, and benefits are awarded. 20 C.F.R. § 416.920.

In the case *sub judice*, both parties agree that the plaintiff has not engaged in any substantial gainful activity since his alleged onset date of disability; he has severe impairments; he does not have an impairment or combination of impairments that satisfies a listing in Appendix 1, Subpart P, Regulations No. 4; and, he is unable perform his past relevant work. They disagree, however, on whether his impairments prevent him from performing any work. Hence, the plaintiff has appealed to this Court and seeks to have the Commissioner's decision reversed.

### III

Plaintiff has submitted two grounds in support of his motion for judgment on the pleadings. He alleges that the ALJ's findings concerning his pain and credibility are not

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[4] *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

supported by substantial evidence and that the ALJ failed to consider the combined impact his impairments have on his ability to work. The Commissioner, on the other hand, contends that the ALJ's decision is supported by substantial evidence and adheres to the law. The Court will address plaintiff's grounds for judgment on the pleadings seriatim.

### A

Plaintiff's first argument for relief is that the ALJ's findings concerning his pain and credibility are not support by substantial evidence.

The Fourth Circuit has developed the following standard for determining whether an individual's pain is disabling. "[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). Thus, in order for a "disability to be found, an underlying medically determinable impairment resulting from some demonstrable abnormality must be established." *Id.* at 592. Furthermore, "allegations of pain and other subjective symptoms, without more, are insufficient." *Id.* "Pain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." *Id.* (quoting *Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984); *see also* 20 C.F.R. §§ 404.1528(a), 416.928(a) (stating that a claimant's "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment").

Turning to the law on credibility, it is the ALJ's responsibility, not the court's, to weigh and resolve conflicts in the evidence. Courts are not allowed to substitute their judgment for that of the ALJ, provided that substantial evidence supports the decision. *Hays*, 907 F.2d at 1456.

*See also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (recognizing that the ALJ's assessment of claimant's pain level is entitled to great weight); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (*per curiam*) (stating that the ALJ has a duty of explanation when making determinations about the credibility of a claimant's testimony).

The record contains the following medical evidence: On May 23, 2002, the plaintiff was admitted to St. Mary's Hospital for unstable angina. After examining the plaintiff, Danielle King, M.D. diagnosed unstable angina; significant coronary artery disease; hypertension; tobacco abuse; and, hyperlipidemia. The plaintiff underwent a catheterization and angioplasty. On May 25, 2002, he was discharged from the hospital with prescriptions for aspirin, Plavix, Toprol, Lipitor and Nitroglycerin.

On September 26, 2002, the plaintiff was evaluated by Teodoro L. Sablay, M.D. at the request of plaintiff's physician, Dr. Klinestiver. The plaintiff reported drinking a half-gallon of vodka everyday for the past ten years, that he was arrested three times for DUI in 1991 and 1992 and that he lost his driver's license for ten years. Dr. Sablay diagnosed alcohol dependence and recommended counseling and AA meetings.

On January 8, 2003, the plaintiff underwent a physical examination by Stephen Nutter, M.D. at the State Agency's request. The plaintiff reported that his chief complaint was knee pain. The plaintiff also reported that he can walk about one mile before becoming short of breath. Dr. Nutter observed the following:

> **GENERAL**: The patient ambulates with a normal gait, which is not unsteady, lurching or unpredictable. The patient does not require the use of a handheld assistive devise. The patient appears stable at station and comfortable in the sitting position, but uncomfortable in the supine position. Intellectual functioning appears normal during the examination. The patient's hearing appears

to be adequate for normal conversation. Recent and remote memory for medical events is good.

(R. 136.)

Upon examination, Dr. Nutter found the following:

    **UPPER EXTREMITIES**: There is pain and tenderness noted in the right shoulder, but not the left shoulder. There is pain and tenderness in the right elbow and right wrist with swelling of the right elbow. There is crepitus in both shoulders. The left elbow and wrist are non-tender. There is no swelling of the shoulders, left elbow or either wrist. There is no redness, warmth or nodules. There are range of motion abnormalities of the right elbow. There is a suspicious looking lesion noted on both forearms, a little bigger on the left than the right, but still about 4 mm on the left with blackish color changes noted. The lesion on the right had some fleshy color to it as well as blackish color changes. . . .

    **HANDS**: Examination of the hands reveals no tenderness, redness, warmth or swelling. There is no atrophy and the patient is able to make a fist bilaterally. There are Heberden's nodes, but no Bouchard's nodes. The patient is able to write and pickup coins with either hand without difficulty. Grip strength measures 14 kg of force on the right and 28 kg of force on the left. Grip strength is diminished when using the Odynometer for the patient's age. During the physical exam when squeezing my finger, the patient was able to do so well and with a good firm grip. I would rate grip strength as being intact at 5/5 bilaterally. . . .

    **LOWER EXTREMITIES**: Examination of the legs reveals pain and tenderness noted in both knees with warmth noted in the left knee with swelling and slight effusion there. There is no redness in either knee. There is no warmth or swelling in the right knee. He had no laxity noted and there is no crepitus. There is reduced range of motion of the knees that seemed to be true limitation of the joints. There is no tenderness, redness, warmth, swelling, fluid, laxity or crepitus of the ankles or feet. There is no calf tenderness, redness, warmth, cord sign or Homans sign. . . .

    **CERVICAL SPINE**: Examination of the cervical spine reveals no tenderness over the spinous processes. There is no evidence of paravertebral muscle spasm. There is pain with range of motion testing of the neck. . . .

    **DORSOLUMBAR SPINE**: Examination of the dorsolumbar spine reveals normal curvature. There is no evidence of paravertebral muscle spasm. There is tenderness to the paraspinal muscles and the spinous processes of the

lumbar spine. The patient complains of pain in the back with range of motion testing of the hips and lumbar spine. Straight leg raise test in the sitting and supine position is normal. The patient is able to stand on one leg at a time without difficulty. There is no hip joint tenderness, redness, warmth, swelling or crepitus. There are range of motion limitations in the hip due to back pain. . . .

**NEUROLOGICAL**: Cranial nerves II-XII are intact. Muscle strength and tone are normal at 5/5 bilaterally in the upper and lower extremities, except for the left knee where he had giveaway weakness due to knee pain. There is no evidence of atrophy noted. Sensory modalities are well preserved including light touch, pinprick, and vibration. Deep tendon reflexes were difficult to elicit. The right patellar reflex is reduced to 1+/4 with a flicker of response on the left. The left biceps is .5+/4 while all others are absent. Hoffmann and Babinski's signs are negative. There is no clonus. . . . Cerebellar function is intact. The patient is able to walk on the heels, toes, and perform tandem gait, but with complaints of knee pain when doing so. He was unable to squat due to knee pain.

R. 137-39.)

The plaintiff's chest was x-rayed on January 8, 2003. Eli Rubenstein, M.D. reported that the x-ray revealed a normal chest.

On January 22, 2003, Fulvio Franyutti, M.D. completed a physical RFC assessment for the plaintiff. Based on the medical evidence gathered at that time, Dr. Franyutti opined that the plaintiff was able to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday and perform unlimited pushing or pulling. He further determined that the plaintiff had limited vision in his right eye, that he should avoid extreme cold and that he could occasionally climb ramps, stairs, ladders, ropes and scaffolds; balance; stoop; kneel; crouch; and, crawl. On April 2, 2003, Hugh M. Brown, M.D. confirmed Dr. Franyutti's assessment of plaintiff's physical abilities.

On April 8, 2003, plaintiff underwent a follow-up examination for his coronary artery disease. Based on plaintiff's complaint regarding mowing his lawn, Aldino Cellini, M.D.

diagnosed that his heart had diminishing functional capacity. The Court notes that Dr. Cellini reported that the plaintiff denied "any symptoms of overt chest discomfort similar to the angina he had on his initial presentation." (R. 202.)

On April 21, 2003, the plaintiff underwent a stress test. Silvestre Cansino, M.D. reported that plaintiff's Adenosine stress test was normal, that there was no induction of chest pain, that there was no significant hemodynamic response to Adenosine and that there was no ventricular arrhythmias. (R. 203.)

On June 3, 2003, the plaintiff returned to Dr. Cellini, complaining of fatigue and left knee pain. Upon examination, Dr. Cellini found that the plaintiff was in no distress, that his heart rate and rhythm were regular with no murmur appreciated, that his lungs were clear to auscultation and that his extremities were free of cyanosis, clubbing and edema.

On December 5, 2003, the plaintiff underwent a pulmonary medical evaluation. After examining the plaintiff, Robert J. Mezey, M.D. informed the plaintiff that he had found evidence consistent with silicosis. A chest x-ray confirmed Dr. Mezey's diagnosis.

On February 4, 2004, the plaintiff sought treatment from Jack R. Steel, M.D. for left knee pain. Dr. Steel diagnosed degenerative arthritis, left knee with exacerbation of pain. Dr. Steel prescribed Naprosyn.

On February 21, 2004, the plaintiff testified that he had arthritis with constant pain in his knees, back, neck and right arm. He further testified that he has not been able to work since he had surgery on his left knee in 1992. He also testified that he is able to walk one to two blocks, stand for five minutes, sit for thirty minutes and lift twenty to thirty pounds. Finally, he testified that he is able to care for his personal needs, visit with family, watch television, clean his room

and tries to mow grass.

After considering the above medical evidence, the Court agrees with the ALJ's assessment that the medical evidence in the record indicates that plaintiff's heart disease is stable; that he has denied experiencing any consistent chest pain, dyspnea or shortness of breath; that he has received minimal conservative treatment for his complaints of back and joint pain; and, that he still consumes alcohol on a daily basis. Furthermore, plaintiff reported to Dr. Nutter that he could walk a mile, yet, he testified that he could only walk one or two blocks. Dr. Nutter also observed that plaintiff's gait was normal and that he did not require a handheld assistive devise. As plaintiff's subjective claims of pain are not supported by objective medical evidence showing the existence of medical impairments which could be expected to produce actual pain, in the amount and degree, as alleged by him, the Court holds that substantial evidence supports the ALJ's finding that he is not disabled due to disabling pain. The Court further holds that because the objective medical evidence is inconsistent with plaintiff's testimony substantial evidence supports the ALJ's finding concerning plaintiff's credibility. *See Hays*, 907 F.2d at 1456. Finally, the Court notes that the ALJ did not ignore plaintiff's allegations of pain because the ALJ did restrict the plaintiff to light work with alternate sitting and standing at one-half hour intervals.

### B

Next, the plaintiff argues that the ALJ failed to properly consider the combined impact of his impairments on his ability to perform his previous relevant work.

The Fourth Circuit has held that "Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether any such impairments

if considered separately' would be sufficiently severe." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (quoting 42 U.S.C.A. § 432(d)(2)(c) (1982 and Supp. 1988)).

After reviewing the ALJ's decision and the testimony at the administrative hearing, the Court rejects plaintiff's contention. The ALJ's RFC finding as well as his hypothetical questions to the vocational expert set out all of the plaintiff's impairments that were supported by the objective medical evidence. The ALJ's RFC finding is extensive, and it takes into account plaintiff's back, neck, elbow and knee pain, heart condition and depression. The vocational expert, using those limits identified by the ALJ, testified that there were a significant number of jobs in the economy which plaintiff could perform. Thus, both in his findings and in soliciting the views of the vocational expert, the ALJ considered the combined effect of the plaintiff's impairments as established by the evidence. Therefore, the Court holds that there is substantial evidence in the record to support the ALJ's finding concerning the combined effect of plaintiff's impairments on his ability to perform work.

## IV

On the basis of the foregoing, it is **ORDERED** that the plaintiff's motion for judgment on the pleadings be **DENIED**, that the Commissioner's motion for judgment on the pleadings be granted and the Commissioner's decision be **AFFIRMED**. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to all counsel of record.

ENTER:

*Robert Staker*

ROBERT J. STAKER
Senior United States District Judge